IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

(To be supplied by the court)

**ASHLEE M. HANDY**, Plaintiff

FILED
UNITED STATES DISTRICT COURT
DENVER COLORADO

**OCT 28 2020**

JEFFREY P. COLWELL
CLERK

v.

**MAXIMUS INC.** ,

**SHARON DORCAS** ,

**SCOTT CLOUD** ,

**PRIME SOURCE STAFFING** ,

**NICHOLAS WERNER** , Defendant(s).

(List each named defendant on a separate line. If you cannot fit the names of all defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed in the above caption must be identical to those contained in Section B. Do not include addresses here.)

---

**EMPLOYMENT DISCRIMINATION COMPLAINT**

---

## NOTICE

Federal Rule of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should not contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include only: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

### A. PLAINTIFF INFORMATION

*You must notify the court of any changes to your address where case-related papers may be served by filing a notice of change of address. Failure to keep a current address on file with the court may result in dismissal of your case.*

Ashlee M. Handy P.O. Box 221531 Denver CO 80222

(Name and complete mailing address)

(720) 572-9120.   ashlee.handy0719@gmail.com

(Telephone number and e-mail address)

### B. DEFENDANT(S) INFORMATION

*Please list the following information for each defendant listed in the caption of the complaint. If more space is needed, use extra paper to provide the information requested. The additional pages regarding defendants should be labeled "B. DEFENDANT(S) INFORMATION."*

Defendant 1: Maximus Inc. 4500 Cherry Creek Drive South Denver, CO 80246
(Name and complete mailing address)

(303) 217-4200

(Telephone number and e-mail address if known)

Defendant 2: Sharon Dorcas. 4500 Cherry Creek Dr. South Denver, CO 80246
(Name and complete mailing address)

(303) 217-4200

(Telephone number and e-mail address if known)

Defendant 3: Scott Cloud. 4500 Cherry Creek Dr. South Denver, CO 80246
(Name and complete mailing address)

(303) 217-4200
(Telephone number and e-mail address if known)

Defendant 4:   Prime Source Staffing 10065 E. Harvard Ave. Ste. 230 Denver, CO 80246

(Name and complete mailing address)

(303) 869-2990

(Telephone number and e-mail address if known)

Defendant 5:   Nicholas Werner 10065 E. Harvard Ave. Ste. 230 Denver, CO 80246

(Name and complete mailing address)

(303) 869-2990   nwerner@primesourcestaffing.com

(Telephone number and e-mail address if known)

## C.   JURISDICTION

*Identify the statutory authority that allows the court to consider your claim(s): (check all that apply)*

X Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, et seq. (employment discrimination on the basis of race, color, religion, sex, or national origin)

Americans with Disabilities Act, as amended, 42 U.S.C. §§ 12101, et seq. (employment discrimination on the basis of a disability)

Age Discrimination in Employment Act, as amended, 29 U.S.C. §§ 621, et seq. (employment discrimination on the basis of age)

Other: (*please specify*)

**D.     STATEMENT OF CLAIM(S)**
*State clearly and concisely every claim that you are asserting in this action and the specific facts that support each claim. If additional space is needed to describe any claim or to assert additional claims, use extra paper to continue that claim or to assert the additional claim(s).*
*Please indicate that additional paper is attached and label the additional pages regarding the statement of claims as "D. STATEMENT OF CLAIMS."*

CLAIM ONE:   42 U.S.C. § 1981-CIVIL RIGHTS ACT OF 1986;

The conduct complained of in this claim involves the following: (*check all that apply*)

      failure to hire                    different terms and conditions of employment

      failure to promote               failure to accommodate disability

      X termination of employment     retaliation

      other: (*please specify*)

Defendant's conduct was discriminatory because it was based on the following: (*check all that apply*)

      X race         religion         national origin        age

      color         X sex          disability

      Supporting facts:

1. Mrs. Ashlee M. Handy (herein "Plaintiff"), hereby incorporates by reference all paragraphs of this complaint as if fully set forth herein.

2. Defendants were acting under color of state law in their actions which occurred at all relevant times to this action.

3. This Claim One is being leveled against Maximus Inc. (herein "Maximus"), Prime Source Staffing (herein "Prime Source"), Sharon Dorcas, Scott Cloud and Nicholas Werner (herein "Defendant(s)"), in their individual and official capacities, as employees of Maximus and Prime Source, for intentionally firing Plaintiff based on hiring practices and policies, that has a "disparate impact" on white women, who're victims of domestic violence and domestic abuse, which ultimately subjected Plaintiff to "disparate treatment."

4. Plaintiff is a white woman in her thirties, and a victim of domestic violence, which makes her a

member of a protected class.

5. On August 25, 2018, Plaintiff was hired by Defendant Werner at Prime Source as a customer service representative.

6. Prime Source and Maximus have an employment contract with one another, and entered into an employment contract with Plaintiff.

7. Maximus draws employees from Prime Source due to Maximus having a high turn over ratio.

8. Prime Source is a staffing agency.

9. Maximus is a call center that specialize in open enrollment for health insurance benefits.

10. Open enrollment for health insurance benefits begins on November 1st every year and ends December 15th.

11. At the time of her hiring, Plaintiff had several years of customer service experience.

12. On August 27, 2018, Plaintiff began training with Maximus.

13. Plaintiff's training with Maximus lasted approximately 6-8 weeks.

14. Plaintiff was trained by Defendant Dorcas who is the Office Manager at Maximus.

15. Defendant Dorcas explained to Plaintiff, that she would hire Plaintiff permanently with Maximus, if she demonstrate, she's qualified for the position.

16. Sometime in September 2018, Plaintiff successfully completed her training.

17. Plaintiff had one of the highest quality assurance (QA) scores of the training participants in her class.

18. After the training ended, Plaintiff immediately began working on the floor at Maximus.

19. From September 2018 until December 2018, Plaintiff maintained one of the highest QA scores at Maximus.

20. On the morning of December 5, 2018, Plaintiff contacted Defendant Dorcas, to inform her of domestic violence problems she was having.

21. Plaintiff made this revelation in case she needed to take time off from work.

22. On December 5, 2018, Plaintiff left work early.

23. On December 6, 2018, after arriving to work, Defendant Dorcas contacted Plaintiff.

24. Defendant Dorcas falsely informed Plaintiff, that her husband came to the job, on December 5, 2018, after she left work, looking for Plaintiff with a gun.

25. Defendant Dorcas didn't call the police to report the alleged incident, which called into question the truth of the matter.

26. Defendant Dorcas demanded Plaintiff go to the police and file a police report regarding the

questionable gun claim.

27. Plaintiff took Defendant Dorcas demand to mean, "if she didn't go to the police, she would loose her job."

28. Plaintiff took the day off and went to the police department to make a police report.

29. On December 7, 2008, after arriving to work, Defendant Cloud contacted Plaintiff.

30. Defendant Cloud informed Plaintiff of the wonderful job she was doing and explained that Maximus intended to hire her permanently.

31. Defendant Cloud also mentioned his and Defendant Dorcas safety concerns, due to Defendant Dorcas gun allegations, regarding Plaintiff's husband.

32. On December 10, 2018, when Plaintiff arrived to work, Defendant Dorcas informed Plaintiff that her desk was cleaned out and she was being terminated, due to domestic violence.

33. Plaintiff couldn't believe what was happening because she hadn't done anything wrong.

34. December 7, 2018, was Plaintiff's last day of being employed by Prime Source and Maximus.

35. After Plaintiff was terminated, she received letters from Defendants Dorcas and Werner that predated the December 7, 2018 termination date.

36. On December 5, 2018, the day that Plaintiff's husband allegedly came to her job with a gun, Defendant Dorcas submitted a termination letter.

37. Defendant Dorcas termination letter informed Plaintiff, that she was being terminated because "open enrollment ended therefore ending the contract period."

38. On December 6, 2018, the day after Plaintiff's husband allegedly came to her job with a gun, Defendant Werner submitted a termination letter.

39. Both letters discussed Plaintiff's high quality work performance, and informed Plaintiff that she would be considered for future employment with the companies.

40. Plaintiff hasn't been contacted by either company since the December 7, 2018 termination.

41. Upon information and belief, Plaintiff's termination was directly related to her being a white woman victimized by domestic violence.

42. Health insurance open enrollment doesn't end until December 15th every year.

43. Defendant Dorcas termination letter was dated December 5, 2018.

44. Defendant Werner's termination letter was dated December 6, 2018.

45. Both termination letters came on the heels of the December 5, 2018 domestic violence incident and predated the open enrollment end date.

46. Defendants had promised to hire Plaintiff permanently after open enrollment ended.

47. Firing Plaintiff for being a victim of domestic violence is tantamount to firing her for being white and being a woman.

48. White women are more likely than women of other races to be victims of domestic violence.

49. An estimated 1.3 million women are victims of physical assault by an intimate partner each year.

50. The majority (73%) of family violence victims are female.

51. Females were 84% of spousal abuse victims and 86% of abuse victims at the hands of a boyfriend.

52. About three-fourths of the persons who commit family violence are male.

53. Most family violence victims were white (74%), and the majority were between ages 25 and 54 (65.7%).

54. Most family violence offenders were white (79%), and most were age 30 or older (62%).

55. When domestic violence crosses into the workplace, many companies are ill-equipped to support their employees. 56. Nearly 65 percent of companies don't have a formal domestic violence prevention policy.

57. Approximately 80 percent of companies don't offer employees training on domestic violence in the workplace.

58. Defendants don't have a formal domestic violence prevention policy in place.

59. Defendants don't offer employees training on domestic violence in the workplace.

60. Victims of intimate partner violence lose a total of 8.0 million days of paid work each year.

61. The cost of intimate partner violence exceeds $8.3 billion per year.

62. Between 21-60% of victims of intimate partner violence lose their jobs due to reasons stemming from the abuse.

63. If Defendants had formal domestic violence prevention policies and trained their employees on domestic violence in the workplace, the above intentional discriminative based termination would not have took place.

64. These statistics are staggering and support the proposition that Defendants practices and policies, to automatically terminate employees victimized by domestic violence and domestic abuse, is discriminative, and subjects women, particularly white women, to "disparate treatment."

65. Although the employment practice is facially neutral, an employment practice which operates to exclude a disproportionate percentage of white women violates Section 1981.

66. Defendants terminated Plaintiff.

67. Plaintiff's race was a motivating factor in Defendants' decision to terminate her.

68. Defendants decision to terminate Plaintiff, caused her pain and suffering, and a substantial financial hardship.

69. Defendants Maximus, Prime Source, Dorcas, Cloud, and Werner, implemented "Domestic violence" termination practices and policies, knowing that the policy would subject white women to "disparate treatment."

70. Defendants, as described above, were acting recklessly, knowingly, intentionally, willfully and wantonly, and caused Plaintiff's injuries.

CLAIM TWO:   TITLE VII of the Civil Rights Act of 1964 ai:.l 1991:

The conduct complained of in this claim involves the following: (*check all that apply*)

        failure to hire          different terms and conditions of employment

        failure to promote         failure to accommodate disability

 X  termination of employment        retaliation

        other: (*please specify*)

Defendant's conduct was discriminatory because it was based on the following: (*check all that apply*)

   X race        religion        national origin        age

    color        X sex        disability

Supporting facts:

71. Plaintiff hereby incorporates by reference all paragraphs of the Complaint as if fully set forth herein.

72. Defendants were acting under color of State Law in their actions which occurred at all relevant times to this action.

73. This Claim Two is being leveled against Defendants Maximus Inc. (herein "Maximus"), Prime Source Staffing (herein "Prime Source"), Sharon Dorcas, Scott Cloud and Nicholas Werner (herein "Defendant(s)"), in their individual and official capacities, as employees of Maximus and Prime Source, for implementing and enforcing domestic violence termination practices and policies, that has a "disparate impact" on women.

74. Plaintiff is a white women in her thirties, and a victim of domestic violence, which makes her a member of a protected class.

75. Defendants knew at all times, that Plaintiff is a woman and that she's white, because they we're her supervisors and met with her regularly.

76. Defendants terminated Plaintiff's employment, due to her being a victim of domestic

violence.

77. Firing Plaintiff for being a victim of domestic violence is tantamount to firing her for being a women.

78. Women are more likely than men to be victims of domestic violence.

79. An estimated 1.3 million women are victims of physical assault by an intimate partner each year.

80. The majority (73%) of family violence victims are female.

81. Females were 84% of spousal abuse victims and 86% of abuse victims at the hands of a boyfriend.

82. About three-fourths of the persons who commit family violence are male.

83. These statistics are staggering and support the proposition that Defendants practices and policies, to automatically terminate employees victimized by domestic violence and domestic abuse, is discriminative, and has a "disparate impact" on women.

84. Although the employment practice is facially neutral, an employment practice which operates to exclude a disproportionate percentage of women violates Title Vll.

85. Defendants Maximus, Prime Source, Dorcas, Cloud, and Werner, implemented "Domestic violence" termination practices and policies, knowing that the policy would have a "disparate impact" on women.

89. Plaintiff was overly qualified for the position of customer service.

90. Plaintiff maintained one of the highest QA scores at Maximus.

91. Defendants Maximus, Prime Source, Dorcas, Cloud, and Werner, follow an absolute custom, practice or policy of terminating employees who're victims of domestic violence.

92. This custom, practice or policy violates Title VII, because it operates to terminate women from employment at a substantially higher rate than men, is not job related, and has a "desperate impact" on women.

93. For the reasons outlined in the above-mentioned paragraphs, shows Plaintiff suffered an adverse employment action.

94. The statistics outlined in ¶ 78-82, show that the adverse action occurred under circumstances giving rise to an inference of discrimination.

95. The statistics support the proposition that Defendants custom, practice or policy of terminating employees who're victims of domestic violence is discriminative, and have a "disparate impact" on women.

96. Defendants, as described above, were acting recklessly, knowingly, intentionally, willfully and wantonly, caused Plaintiff's injuries.

CLAIM THREE:   42 U.S.C. §1983 Fourteenth Amendment- Equal Protection:

The conduct complained of in this claim involves the following: (*check all that apply*)

|   |   |
|---|---|
| ___ failure to hire | ___ different terms and conditions of employment |
| ___ failure to promote | ___ failure to accommodate disability |
| _X_ termination of employment | ___ retaliation |
| ___ other: (*please specify*) | |

Defendant's conduct was discriminatory because it was based on the following: (*check all that apply*)

|   |   |   |   |
|---|---|---|---|
| _X_ race | ___ religion | ___ national origin | ___ age |
| ___ color | _X_ sex | ___ disability | |

Supporting facts:

97. Plaintiff hereby incorporates by reference all paragraphs of this complaint as if fully set forth herein.

98. Defendants were acting under color of State Law, in their actions and inactions, which occurred at all relevant times to this action.

99. This Claim Three is being leveled against Defendants Maximus Inc. (herein "Maximus"), Prime Source Staffing (herein "Prime Source"), Sharon Dorcas, Scott Cloud and Nicholas Werner (herein "Defendant(s)"), in their individual and official capacities, as employees of Maximus and Prime Source, for implementing and enforcing domestic violence termination

practices and policies, that has a "disparate impact" on women, and subjected Plaintiff to "disparate treatment."

100. Plaintiff is a white women in her thirties, and a victim of domestic violence, which makes her a member of a protected class.

101. Women are more likely than men to be victims of domestic violence.

102. An estimated 1.3 million women are victims of physical assault by an intimate partner each year.

103. The majority (73%) of family violence victims are female.

104. Females were 84% of spousal abuse victims and 86% of abuse victims at the hands of a boyfriend.

105. About three-fourths of the persons who commit family violence are male.

106. These statistics are staggering and support the proposition that Defendants practices and policies, to automatically terminate employees victimized by domestic violence and domestic abuse, is discriminative, and has a "disparate impact" on women, and subjected Plaintiff to " disparate treatment."

107. Although the employment practice is facially neutral, an employment practice which operates to exclude a disproportionate percentage of women violates Title Vll.

108. Defendants Maximus, Prime Source, Dorcas, Cloud, and Werner, implemented "Domestic violence" practices and policies, knowing that the policy would have a "disparate impact" on women, and subjected Plaintiff to "disparate treatment."

109. Plaintiff was overly qualified for the position of customer service.

110. Plaintiff maintained one of the highest QA scores at Maximus.

111. Defendants Maximus, Prime Source, Dorcas, Cloud, and Werner, follow an absolute custom, practice or policy of terminating employees who're victims of domestic violence.

112. This custom, practice or policy violates Title VII, because it operates to terminate women from employment at a substantially higher rate than men, is not job related, and has a "desperate impact" on women, and subjected Plaintiff to "disparate treatment."

113. For the reasons outlined in the above-mentioned paragraphs, shows Plaintiff suffered an adverse employment action.

114. The statistics outlined in ¶ 101-105, show that the adverse action occurred under circumstances giving rise to an inference of discrimination.

115. The statistics support the proposition that Defendants custom, practice or policy of terminating employees who are victims of domestic violence is discriminative, and have a "disparate impact" on women, and subjected Plaintiff to "disparate treatment."

116. Defendants, as described above, were acting recklessly, knowingly, intentionally, willfully and wantonly, caused Plaintiff's injuries.

CLAIM FOUR:  42 U.S.C. §1983- Fourteenth Amendment-Due Process

The conduct complained of in this claim involves the following: (*check all that apply*)

       failure to hire            different terms and conditions of employment

       failure to promote       failure to accommodate disability

X  termination of employment   retaliation

       other: (*please specify*)

Defendant's conduct was discriminatory because it was based on the following: (*check all that apply*)

X race       religion       national origin       age

  color       X sex        disability

Supporting facts:

117. Plaintiff hereby incorporates by reference all paragraphs of this complaint as if fully set forth in.

118. Defendants were acting under color of State Law, in their actions and inactions, which occurred at all relevant times to this action.

119. This Claim Four is being leveled against the Defendants Maximus Inc. (herein

"Maximus"), Prime Source Staffing (herein "Prime Source"), Sharon Dorcas, Scott Cloud and Nicholas Werner (herein "Defendant(s)"), in their individual and official capacities, as employees of Maximus and Prime Source, for the aforementioned acts and omissions, that denies women employees of life, liberty, or property interest, without given "notice" or the opportunity to be heard.

120. Defendants Maximus, Prime Source, Dorcas, Cloud, and Werner, follow an absolute custom, practice or policy of terminating employees who're victims of domestic violence.

121. Although Defendants Maximus, Prime Source, Dorcas, Cloud, and Werner, fired Plaintiff based on her victimization to domestic violence and abuse, they failed to articulate that information in their termination letters.

122.. Plaintiff has a right to be informed why she is being terminated, whereas she can dispute the decision if she believe it to be incomplete or inaccurate information.

123. Defendants Maximus, Prime Source, Dorcas, Cloud, and Werner, after Plaintiff's husband allegedly came to the job looking for her with a gun, never contacted Plaintiff, to inform her that she was being terminated based on the alleged domestic violence incident, which denied her rights to Due Process of Law.

124. Instead, Defendants attempted to disguise the truth behind Plaintiff's termination, by stating that "open enrollment ended."

125. Upon information and belief, Plaintiff's termination was directly related to her being a victim of domestic violence.

126. Health insurance open enrollment doesn't end until December 15th every year.

127. Defendant Dorcas termination letter was dated December 5, 2018.

128. Defendant Werner's termination letter was dated December 6, 2018.

129. Both termination letters, came on the heels of the December 5, 2018 domestic violence incident and predated the open enrollment end date.

130. Besides, Defendants had promised to hire Plaintiff permanently after open enrollment ended.

131. Defendants failure to inform Plaintiff why she was being terminated, violates her due process rights.

132. Defendants as described above, were acting recklessly, knowingly, willfully and wantonly causing Plaintiff's injuries.

CLAIM FIVE:  NEGLIGENCE:

The conduct complained of in this claim involves the following: (*check all that apply*)

|  |  |
|---|---|
| failure to hire | different terms and conditions of employment |
| failure to promote | failure to accommodate disability |
| _X_ termination of employment | retaliation |
| other: (*please specify*) | |

Defendant's conduct was discriminatory because it was based on the following: (*check all that apply*)

|  |  |  |  |
|---|---|---|---|
| X race | religion | national origin | age |
| color | X sex | disability | |

Supporting facts:

133. Plaintiff hereby incorporate by reference all paragraphs of this complaint as if fully set forth herein.

134. Defendants, in their individual and official capacities, committed the negligent actions, as set forth herein above, and those acts proximately caused the emotional, physical and financial injuries visited upon plaintiff.

135. Defendants owed Plaintiff a duty of care to treat her fairly, to not subject her to discriminative termination practices, and to not subject her to emotional distress.

136. Defendants breached that duty of care by way of their own conduct as alleged herein.

137. For example, Defendants Maximus, Prime Source, Dorcas, Cloud, and Werner,

terminated Plaintiff for being a victim of domestic violence and domestic abuse, and then lied about the reasons for the termination to cover up the truth.

138. Defendants conduct has caused Plaintiff emotional distress.

139. As a proximate result of Defendants negligence, Plaintiff has suffered lost wages, loss of enjoyment of life, mental anguish, emotional distress, humiliation, embarrassment.

140. Defendants conduct has caused and continues to cause Plaintiff substantial losses in earnings, significant reputation and professional injury, future earnings and benefits, costs of suit, embarrassment and anguish, all to her damage in an amount according to proof.

141. All the above damages were directly and proximately caused by the aforementioned negligence of the Defendant.

142. Defendant, as described above, was acting recklessly, knowingly, intentionally, willfully and wantonly, caused Plaintiffs injuries.

CLAIM SIX: Negligence Per Se:

The conduct complained of in this claim involves the following: (*check all that apply*)

    failure to hire    different terms and conditions of employment

    failure to promote    failure to accommodate disability

 X termination of employment    retaliation

    other: (*please specify*)

Defendant's conduct was discriminatory because it was based on the following: (*check all that apply*)

    X race    religion    national origin    age

        color              X sex              disability

Supporting facts:

143. Plaintiff hereby incorporates by reference all paragraphs of this complaint as if fully set forth herein.

144. Defendants owed a duty to comply with applicable statutes, regulations, and rules related to employment discrimination. C.R.S. § 24-34-301 and C.R.S. § 24-34-401.

145. Defendants breached this duty by implimenting and enforcing employment customs, practices and policies, that work to terminate employees victimized by domestic violence, in violation of C.R.S. § 24-34-301 and C.R.S. § 24-34-401.

146. Defendants have a legally imposed duty or a standard of conduct under C.R.S. § 24-34-301 and C.R.S. § 24-34-401, that they failed to adhere to.

147. Defendants disregarded Plaintiff's rights and fundamental protections under State and Federal Law.

148. Plaintiff was within the class of persons whom the above-referenced statutes were meant to protect.

149. Defendant's failure to comply with the above-referenced statutes created the type of discrimination against women which the law was designed to protect.

150. Defendant's failure to comply with the above-referenced statutes was the direct and proximate cause of Plaintiff's injuries and damages and thus constitutes negligence per se.

151. Defendant, as described above, was acting recklessly, knowingly, intentionally, willfully and wantonly, caused Plaintiffs injuries.

### E. ADMINISTRATIVE PROCEDURES

Did you file a charge of discrimination against defendant(s) with the Equal Employment Opportunity Commission or any other federal or state agency? (*check one*)

☐ Yes (***You must attach a copy of the administrative charge to this complaint***)

☒ No

Have you received a notice of right to sue? (*check one*)

☐ Yes (***You must attach a copy of the notice of right to sue to this complaint***)

☒ No

### F. REQUEST FOR RELIEF
*State the relief you are requesting or what you want the court to do. If additional space is needed to identify the relief you are requesting, use extra paper to request relief. Please indicate that additional paper is attached and label the additional pages regarding relief as "F. REQUEST FOR RELIEF."*

WHEREFORE, Mrs. Handy requests that this Court enter judgment in her favor and against the Defendants, and award her all relief as allowed by law and equity, including, but not limited to, the following:

a. A declaration that Defendants violated the federal constitutional rights of Mrs. Handy;
b. Actual economic damages as established at trial;
c. Compensatory damages, including but not limited to those for past and future pecuniary and non-pecuniary losses, emotional distress suffering, loss of reputation, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses;
d. Punitive damages for all claims allowed by law in an amount to be determined at trial;
e. Nominal damages;
f. Pre-judgment and post-judgment interest at the highest lawful rate;
g. Attorney's fees and the costs associated with this action as allowed by law;
h. Any further relief that this Court deems just and proper, and any other relief as allowed by law.
i. A trial to a jury on all issues so triable.

## G. PLAINTIFF'S SIGNATURE

I declare under penalty of perjury that I am the plaintiff in this action, that I have read this complaint, and that the information in this complaint is true and correct. *See* 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Under Federal Rule of Civil Procedure 11, by signing below, I also certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending or modifying existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

_____
(Plaintiff's signature)


10-23-2020

(Date)

(Revised December 2017)